The next case is No. 14, 1552 Action Star Enterprise Co. v. Kaijet Technology Intl., Mr. Dragset. Good morning, Your Honors. May it please the Court, barring questions from the panel, which I expect I won't focus today on the merits issues, but I'm happy to answer any questions. In particular, the merit issue actually dealt with by the District Court, and then I will move, if we have time, on to the merits issues, the alternative grounds for me. So on the merits issue that actually dealt with by the District Court, I think the issue is pretty straightforward. The question is, could a reasonable fact finder conclude that at least one person followed the instructions that Kaijet provided and used the product in the way that it was set up to be used? And I think the logical answer to that is, of course, at least one person would have done that. In fact, I think the opposite conclusion is less reasonable, that nobody used this mode of the product. Does that answer the question of whether a direct infringement actually occurred? It provides enough circumstantial evidence under this Court's case law to create a fact question on direct infringement. Can you prove direct infringement by circumstantial evidence? You can, yes. Well, you can prove the existence of someone who performed the direct infringement with circumstantial evidence. I think if there are disputes on particular limitations, which there weren't in their summary judgment motion, we can get to that. But that was not raised in their summary judgment motion. That you would have to point to. You're saying that circumstantial evidence can be used to show, for example, that somebody would have more likely than not followed the instructions. Yes. But you're not showing that that actually happened, that the person actually pushed the button, that there's that direct infringement. You do not have to show that a particular person actually pushed that button. Any person? You don't have to show that the button was pushed. You have to show that it was likely that someone out there pushed the button. You don't have to say, there's a guy named Bob who pushed the button. But if you don't know, if you're showing a likelihood that somebody may have, what you're really saying is that you're not showing that the button was actually pushed. You are showing that they instructed people to push the button and that they sold a product with the button that when pushed would do the act. And I think that's what you have in this court's case law going all the way back to Moleculon, which is the first case that we have here. There was no evidence in Moleculon. Help me with the record on this. I thought that there was a motion for summary judgment filed by Kai Jet on direct infringement. Is that not correct? On direct? On direct infringement. Generally, but not element by element. They did not raise the issue of any particular element. But I thought when it was filed that ActionStar dropped its cause of action for direct infringement. Am I wrong on that? We dropped for direct infringement by Kai Jet. We did not drop the issue of whether their customers were direct infringers. So the case law, I think, you start with Moleculon, that's the Rubik's Cube case, and it involved instructions on a particular way to solve your Rubik's Cube. And if you've ever tried it, you know there's many ways to solve a Rubik's Cube. So there wasn't any evidence cited in that case of a particular person sitting down and following those instructions to solve the Rubik's Cube, to push the button, using your analogy. But there was still sufficient circumstantial evidence that it would have had – that at least one person had done it, that a fact finder could conclude that. I think that pushing the button is important, but that's not enough. In your case, going back to the discussion we had, you also have to show that the instructions map out infringement. Sure. Is that what happened here? Well, let me qualify that answer, because they did not identify any limitation that was missing in their summary judgment motion. And so we were not required to go and identify particular limitations. We were just required to put forward what we had said is the infringement, their instructions, and their product, and we did that. Now, I don't want you to think I'm hiding from the limitations, because we did put forth evidence on the limitations also, and I can go through. There's procedural problems on that for them, because it wasn't in their summary judgment motion. They raised it in the supplemental briefing that you received a couple of days ago. But that's not their motion, and we had no opportunity to respond to that, because that was the last brief. The briefs were filed simultaneously on that. Let me address the three points that they've raised that they say were not addressed by Mr. Chang. Number one is the claim limitation on initializing, I think it's the keyboard and the mouse. Now, this court has said in Moleculon, for example, that experts are not required for proving infringement. Now, since then, in COITO and other cases where it's complicated technology, perhaps you need an expert. But initializing the keyboard and the mouse, turning on the computer and plugging the cords in, I think a reasonable fact finder could conclude, without the help of an expert or other testimony, that the product is suggesting that you turn on your computer before you use it. On the flip side, there's a limitation at the end of the claim that, fittingly enough, says end. And their complaint is, well, Mr. Chang said, well, the thing loops around waiting for you to move back and forth between the models. I appreciate your argument, but I think there's some fundamental issues in your case that we really need to get to. For example, you claimed in the below that there's no direct infringement, or you asserted that there's no direct infringement, correct? I don't think we admitted there's no direct infringement. I think we admitted that we didn't have evidence of a direct infringer, which is the distinction between saying we can't point to somebody who did this. But we repeatedly pointed to their instructions, and we relied on the instructions. What's your evidence of direct infringement? It's their instructions and the Chang declaration are what we're relying on. Chang saying he followed the instructions in using the product. And so it's circumstantial evidence. It's the same sort of evidence that was in Golden Blount, in Moleculon, and in Toshiba. Those were cases where you could not point to a person who then loosened another case. But there's no mapping of the instructions to the claims, to the limitations of the claims. So two parts to that. They never… We saw somebody using a device that looks like ours, and it seems to be doing what we do. That seems to be the strength of your argument. But it seems to me you conceded below that there's no direct infringement. I don't think we conceded. There's two points. We didn't concede at number one. They didn't raise the element-by-element issue in their summary judgment motion. They raised the issue, which is the only issue the court reached was, well, you didn't point to somebody who actually did this. And I think they're not defending that on appeal. They're saying, well, they've shifted now to this element-by-element point. That's not in their summary judgment motion. That's number one. Did we put it in play? That's the law too, right? I mean to show infringement, you've got to show, in your case, that the instructions mapped out infringement, that they met the limits of the claims. Not if they don't put it into play in their summary judgment motion, though. On the merits, we have to do a limitation-by-limitation comparison. But, for example, I'll give you a cite here for, and it's actually in the district court's opinion, which I think is why the district court didn't reach this issue. This court says, in Exigent Technologies, the quote is that the statement has to be that the patentee has no evidence of infringement. That's the point you're making. And pointing to the specific ways in which accused systems did not meet the claim limitation. So they had to do two things. They had to say no infringement, and then they had to say what elements were missing. And that's what they didn't do in their summary judgment motion. All they raised in their summary judgment motion was that we hadn't pointed to a person. And our answer is we don't have to point to that person. The case law, moleculon, and so on, allows circumstantial evidence on that. The other point about pointing to particular elements did not come into the case until the supplemental briefing. It was not in their motion. And, in fact, on the elements, if you look at their summary judgment motion, and I will point you to page 886 of the appendix. This is the background of their summary judgment motion, 886. Okay. Right in the middle, it says, Tyjet disputes that such a use of the accused's products would infringe either Claim 1 or Claim 6 because moving of the cursor involves moving the entire mouse, and they get to the controlling a switch argument. Okay. So, on page 886, they say there's a dispute about one limitation, the controlling the switch limitation. Okay. They don't say there's no dispute. They don't say they should get summary judgment. Then we turn a couple of pages into their summary judgment motion, 894 through 897. They're not moving on that limitation or any other particular limitation of the claim in their summary judgment motion. Their issue that's on appeal is on page 897, or 896, really, and 897, and it's Fujifilm and Janssen and those cases. The point that we didn't point to a particular person. Okay. But what's important to understand is in their summary judgment motion, they did not identify any missing limitation. Now, they did it in their supplemental briefing, and those were the three points that they claimed Mr. Chang forgot to address, initializing the components, which we say is turning them on. I think the instructions, fairly read, suggest to a person you have to turn your computer on before you can hook these wires up. Another one is that they raised is the end limitation of the claim, ENDN. I think a reasonable fact finder could conclude that you're going to stop using this at some point, turn off the computers, unplug them. And then the third one is that the person has to make, I think the term is, judging whether you need to switch from one monitor to the other. Okay. Their materials say this allows you to switch from one monitor to the other. I think a reasonable fact finder could conclude that before you switch from one monitor to the other, you make the mental step of judging that you should be on the other monitor rather than the first one. So these three things that Mr. Chang was missing are, I don't like to use the word inherent, but they're really inherent parts of following their instructions. Of course you have to turn on and turn off the computers. Of course you're going to judge to move before you can move. And their documentation does tout the ability to move between the components. One point I think that is fairly an alternative route for affirmance, and the court doesn't need to reach it, we don't think the court should reach it, is their point about intent. Okay. But I think that's easily dealt with. The case law, multiple of the cases that we cite, and I'll just point you to Fujitsu, 620F3rd at 1332. Golden Blount, 438F3rd at 1361 says, if you know about the patent and you're instructing people to infringe it, that is sufficient to put in play the fact question on intent. So the one question or the one issue that I think is a legitimate alternative ground for affirmance is easily dealt with by this court. The court doesn't have to reach it, but there is enough evidence here to put in play on the facts. But I think it's important that the court understand on all of these alternative grounds that the district court here ruled not on particular limitations missing, but only on the district court's view that we didn't point to a particular infringer. Okay. We think the case law clearly says we don't have to point to a particular infringer. Okay. We don't think this court needs to or should reach the alternative grounds, but if the court does look into them and actually looks at what happened below, that they'll see that KyJet did not raise properly under Stellatech in its summary judgment brief these issues, and so they're not properly in play on appeal. I'll reserve the rest of my time. Thank you, Mr. Dragshack. Mr. Bradway. May it please the court, invoking circumstantial evidence does not allow appellant to make unsupported leaps or unjustifiable inferences from evidence that was never proffered in the district court proceedings. The district court's judgment of non-infringement was correct, well-reasoned, and it should be affirmed because, quite simply, there never was any evidence presented that would show or from which it could be reasonably inferred that there was a tribal issue of fact, a material fact, on the issue of induced infringement. Am I correct that the user manuals for KyJet, for the accused products, instructed the end users to pick the use mouse to move off the edge of the screen option over any of the other three? No, I don't believe that's correct, Your Honor. What the manuals show is that you can toggle between computers. Look at page five of your red brief at the bottom. I apologize for that. That is a typo. That should be do not instruct, and I believe that's corrected later on in the red brief. My apologies for the typo. In the later red brief? No, it says exactly the same thing in the later red brief. Correct. The later red brief, we corrected the citation to the inadvertently omitted supplemental brief on summary judgment, which was incorrectly cited in the red brief. We did not catch this particular typo. Well, let me ask you this then, because that's what this leads up to. How the heck did you justify $430,000 in attorney's fees in this case when it seems to me it was a slam dunk from the beginning? Well, Your Honor, the fees were incurred because the appellant did not do a number of things that would have narrowed the case in a justifiable way. So, for instance, as I believe Your Honor pointed out, there was a claim of direct… I would think that if you're going to charge people that much money, you'd catch these kind of errors in your briefs. Noted, Your Honor. I mean more than noted. I don't think this is justified. I sincerely apologize for that, Your Honor. But if Your Honor looks at the actual – if the court looks at the actual page of the appendix cited here, what they show is that the user manuals allow users to… I looked very closely. Of course, it's what it shows. And because it's, of course, it's what it shows and because I think you had a slam dunk case, I'm just shocked at the numbers you're charging. I understood, Your Honor. If Your Honor is asking about the rates of our firm, I don't know that we can really comment on that. It's something for the district court. But the quality of your work as opposed to the amount you charge really disturbs me. My apologies, Your Honor. I want to address straight away the issue of waiver argued by appellant. There is no waiver of any argument that the appellant never actually matched up the claims of the methods in the patent or each step in the methods with an actual use by anyone in the United States. First of all, that was their burden to do. That's how you show direct infringement of a method claim. That's clear by the Supreme Court's decision in Landline Networks and this Court's jurisprudence including in Joy Technologies as well as Fujitsu and ACO. So first of all, that was their burden. Second of all, because they admitted unequivocally that they had no evidence, direct or circumstantial, of anyone actually using the accused product to perform each of the claim method steps in the order required by the claims, because they made those admissions, we didn't need to actually go and show why individual elements were missing. But more than that, we did. The patches that counsel cited at page 886 of the record specifically put in place this issue that, no, they haven't shown that the controlling the switch dispose on the mouse limitation was actually met with using the accused products. And that is why the district court asked for a supplemental briefing on this issue, which was provided. And therefore, all those arguments that were made on appeal here were preserved and argued below. So I don't think there's any merit to the waiver arguments. But as I said, the single deposit is fact here is that at no point were the actual elements of the claims matched up with any use by anyone in the United States. The user manuals don't do that. They admit critical claim steps such as judging whether a first computer host needs to be operated, judging whether a second computer host needs to be operated. If so, do you go to the step 2D of the claims? All of that is missing. The Chang Declaration, the Declaration of the Inventor, doesn't get appellant there either. Not only is the declaration also missing important claim steps in what he just recites as his use of the accused products, that use occurred in Taiwan. So essentially, appellant is asking the court to infer that, one, Mr. Chang actually practiced all the claim steps, and two, that a user in the United States would have replicated Mr. Chang, the inventor's use in Taiwan. Those inferences are not supportable, and they go straightly into speculation. None of the cases cited by appellants support their theory either. Moleculon, the Rubik's Cube case, there this court was presented with very different evidence. First of all, there was only one infringing use of the accused products. There was only one use, and that use was established to be infringing. That hasn't happened here. Second, there were instruction sheets and solution booklets of how to solve the puzzles that actively describe the infringing use, and there was extensive puzzle sales. If the court looks in the record, there is no evidence of sales, much less extensive sales of the accused products. Of course, the reasoning there is the more extensive the sales, the more permissible an inference that perhaps someone would have used the products in an infringing manner. We don't have that here. Likewise, in Golden Blount, this court was presented with very different evidence than here as well. There, too, the defendant's employees actually admitted that the defendant's secondary gas burner, when assembled, resulted in an infringing configuration of being below the primary burner. As well, defendants, in that case, outside patent counsel testified to the same effect, and I believe the instruction materials provided with the product in that case actively described and showed that specific use. No other use was shown. Again, here, the appellant admits that three of the four uses of the accused products do not infringe. Even if you accept that they have shown that one use, the moving the cursor towards the end of the screen to accomplish toggling between computers, infringes, which, again, they haven't. But even if you assume that they have, what we have here is, at best, that the accused products are capable of infringing. And as this court has repeatedly held in Fujitsu and ACCO and ETAS, that's not enough to show, circumstantially or otherwise, that someone practiced all of the claims method steps in the required order in the United States. Something more is required. In Fujitsu, for example, this court found sufficient circumstantial evidence only for the accused product models where there were active customer service records. That showed that the defendant was purposely telling customers in customer support communications, yes, please use this configuration. Fragment these devices. None of that is present here. I see here the appellant has not pointed to the YouTube video printouts that were very much advanced in district court proceedings. But since it is raised in the paper, I do want to address it very briefly. The district court properly ruled that those were unauthenticated and hearsay. There is no evidence of who posted the videos, who created them, or even what they show. And there's been no showing in this appeal of any abuse of discretion by the district court on that issue. The point here is that the district court considered even all of this untimely evidence, all of this surprise evidence, which was proffered only in opposition to our motion or summary judgment. The district court gave the appellant every chance to save its claims and took the reasonable inferences from all admissible evidence. And that still was not sufficient to show induced infringement. And that decision was correct. This case is, in our opinion, directly analogous to the court's decision in EPAS, which is 473F3-1213, where the court affirmed the summary judgment of non-infringement. Now in EPAS, the patentee relied solely on excerpts of user manuals of the accused product, which in that case were POM PDAs, personal data assistance, to show induced infringement. And the court held that, unlike as in Moleculon, the evidence showed that at best the user manuals in EPAS showed that perhaps all of the claim limitations were present or disclosed in the user manual, but not in the order required by the claims. And so the court held that – sorry, the court concluded that, quote, it requires too speculative a leap to conclude that any customer actually performed the claimed method. That's at page 1223 of the opinion. And as Judge Wallach, I believe, inquired of counsel in another case before ours, we do believe there is an inference that can be taken if a patentee tries to rely on circumstantial evidence but does not make any attempt to elicit direct evidence. And that's the case here. Appellant was a do-nothing plaintiff. It took no deposition. It issued no subpoena of any end user or anyone else to attempt to determine the use of the accused products, even though it admitted early on discovery that it had no such evidence. It did not tender a timely expert report. I was – I focused on some of the things that you're saying when I went through the case, and what I found remarkable is that there was no discovery, limited argument, limited submissions, then dismissal summary judgment, and yet you had fees close to half a million dollars. And the judge reduced them on the fact that you had a block billing matter. What does that mean? You just said these are our fees, and you didn't separate them out by date or by the task that was completed? Not quite, Your Honor. The block billing complaint the district court had was that for certain of our entries, which were broken down by date and attorney and time spent, for some of them there were related tasks that were lumped together. For instance, draft summary judgment motion related legal research. The district court felt that we should have broken those down a little bit more, and that is on us. And the district court reduced the fees accordingly, according with the LOSAR method. But to your – I think directly to your point, Your Honor, there was much more to this case than the actual issues that have boiled to the surface on appeal. Much of the earlier stages of the case were focused on the indefinite – You were arguing that it was almost a do-nothing case, and now you're going to tell us those substantial work required? Not quite, Your Honor. It was definitely a do-nothing case on the infringement side, but there was much briefing on the invalidity of the patent. We had argued the indefiniteness of the claims because it requires subjective judgment by an operator. There was no support in the claim construct – in the intrinsic record of who the operators were. And I don't want to argue the issue of indefiniteness, but my point is there were other issues beyond infringement, which I believe are described in the order. That's a fair statement. Give me your best estimate of what proportion of the fees were related to that. To the indefiniteness? I hesitate to give you a percentage. I would think, just as a pure guess, along the neighborhood of 20 to 30 percent, but that's just off the bat. I can't say affirmatively. Lastly, turning to the issue of the award of attorney's fees and the fine of exceptionality, we don't think there's any fairer dispute that the district court did not abuse its discretion in the way it awarded fees. It's clear from the text of the district court's order that the district court considered the totality of circumstances. It recited all the proceedings in the case from beginning through summary judgment. And it was not focused, in other words, on a single discovery transaction, as the appellant has argued. The district court says that it was not a frivolous case, and it seems to me that the district court focused on the YouTube videos, and perhaps she over-relied on that or over-focused on that. What's your view on that? I disagree that the court overly relied on that, Your Honor. The YouTube videos were one of the only three things appellant pointed to, and only in opposition to summary judgment, as this evidence of infringement. This was a patent infringement case with no evidence of patent infringement up until we moved for summary judgment. The district court properly – was correct in perhaps lending more attention to specifically the actual so-called evidence that was properly laid in the game. So I don't think that this is an issue of being only focused on that, and it was appropriate for the district court to give a little bit more treatment to that since that was so heavily argued in the district court. I see that my time has expired, but – It is. Any more questions? Any more questions? Do you have one last word, a short one? The short one, Your Honor, is that we respectfully request that the court affirm in its entirety both the judgment of non-infringement and the judgment of attorneys' fees. Thank you. Okay. Thank you. Mr. Draxler. Thank you. Counsel placed central reliance on a case called EPAS. I don't see it cited in the red brief. I don't think it's a recent case, but the description of it sounded like it is a case in which the accused product was capable of infringing. We agree those types of cases go down on summary judgment. The distinction that we have is the cases like Moleculon, like Lucent, like Fujitsu – I'm sorry, unlike Fujitsu, like Moleculon, like Toshiba, where the capability of infringement is accompanied by instructions. Okay. And also, I don't think this is necessary, but that it be the default mode for the device. And I direct the court to Appendix 1144, where it says, the picture below is shown when two Windows OS computers are connected. Okay. And to Judge Wallach, your question about this being referred to others or what have you, the default shows that the box that is checked is the accused feature, the accused mode of operating this device, not one of the other modes. Okay. When you plug your two computers together, this document – this is the document that Mr. Chang was referring to. It's their JUC100 wormhole product. When you plug the two computers together, the preference that is checked is the accused feature. So it's not just a capability to infringe, but this is the default when you turn on – or when you plug the computers together and turn them on. Now, if you turn one page from that or a couple pages to 1146, Judge Wallach, I sense some skepticism on the merits, so I'm going to try and address that as best I can. You're going to have a hard road. Yeah, I hear you. Limited time. Counsel thinks that their lead or the one point that they brought up that we seem to be missing is that they don't teach judging whether you should switch from the one monitor to the other. Okay. I'll point to 1146. It talks about keyboard and mouse sharing, and it says – And he says, move your mouse cursor – I'm sorry, their manual says, move your mouse cursor between two displays naturally and seamlessly. And then it says, now you can move the mouse cursor across the left edge of the display to switch the mouse between the two Windows OS computers. Okay. I think it's fair to say inherent in that is that a person is going to judge that they want to move between the monitors when they move the mouse. That instructing someone, you can move the mouse, has inherent in it a statement of when you want to, when you've judged that you should move the mouse between the computers. Now, I know he said there were many others. That's the one that he addressed. The others that they actually addressed in the briefing – and again, it was not in their summary judgment motion. It was in the supplemental briefing that we never had a chance to respond to and was never invited by the court and was never addressed by the court – are the issues about initializing the keyboard and the monitor and then ending. And I would argue that those are inherent in any use of the product. Obviously, they show these two computers turned on with the screens working. Of course, you just initialized the keyboard and the monitor. You turned on your computer. These are not things that we need an expert to talk about. I submit that they're not things that Mr. Chang had to talk about. The fact that they are in evidence, they are in the record in their own manual, I don't think that the court's law requires a witness to explain something that simple or that they have to expressly say, by the way, we show in our manual a computer that's turned on. Make sure to turn on your computer before you put these things together. The things that they identify are so simple that anybody would know to perform them, and it would be part and parcel of reading this manual. Any more questions? Thank you. Thank you both. Case is taken under submission.